UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

WILLIAM LAPIERRE and CLARK FUNERAL
HOME, INC., each suing derivatively on behalf of
the Town of Yorktown,

                    Plaintiffs,

    - against -

ERIC DIBARTOLO, Individually and in his
Official Capacity as Highway Superintendent of the
Town of Yorktown, ENVIROSTAR CORP.,
YORKTOWN FUNERAL HOME, LLC and JOHN
DOES "1" through "10,"

                    Defendants.

**OPINION AND ORDER**

12 Civ. 1996 (ER)

---

<u>Appearances:</u>

David O. Wright, Esq.
Yorktown Heights, NY
*Attorney for Plaintiffs*

Brian S. Sokoloff
Leo Dorfman
Sokoloff Stern LLP
Carle Place, NY
*Attorneys for Defendants Eric DiBartolo and John Does "1" through "10"*

Amy L. Bellantoni
The Bellantoni Law Firm, LLP
Scarsdale, NY
*Attorney for Defendant Yorktown Funeral Home, LLC*

<u>Ramos, D.J.</u>:

       Plaintiffs William LaPierre and Clark Funeral Home, Inc. ("Plaintiffs") commenced this

action in the Supreme Court of the State of New York, Westchester County on February 21,

2012, alleging violations of 18 U.S.C. § 1962(c), (d) (the "RICO claims"), a state law taxpayer

claim pursuant to N.Y. General Municipal Law ("GML") § 51, and state law claims for unjust

enrichment, constructive trust and breach of fiduciary duty against defendants Eric DiBartolo ("DiBartolo"), Yorktown Funeral Home, LLC ("Yorktown") and Envirostar Corp. ("Envirostar") (collectively, "Defendants").  *See* Doc. 1 at 29-35, ¶¶ 82-112.  DiBartolo removed the action to this Court on March 19, 2012 on the basis of federal question jurisdiction.  *Id.* at 1, ¶¶ 2-3. Plaintiffs filed an Amended Complaint asserting the same five causes of action on March 28, 2012.  Doc. 6 ("Am. Compl.").  The Amended Complaint asserts that this Court has subject matter jurisdiction over the RICO claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiffs' state law under 28 U.S.C. § 1367.  Am. Compl. ¶ 11.

Before the Court are two separately briefed motions to dismiss Plaintiffs' Amended Complaint filed by defendants DiBartolo and Yorktown.  *See* Docs. 10-17, 19, 23.  DiBartolo moves to dismiss Plaintiffs' Amended Complaint for lack of standing pursuant to Fed. R. Civ. P. 12(b)(1) and for failure to state a claim under Fed. R. Civ. P. 12(b)(6).[1]  Doc. 13.  Yorktown moves to dismiss the Amended Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  Doc. 10.  Envirostar has not responded to the Amended Complaint and is in default.

For the reasons set forth below, the Court concludes that Plaintiffs do not have Article III standing to assert their claims in federal court, and thus the Court does not have jurisdiction over this case.[2]  Since this action was initially filed in state court, the conclusion that this Court does

---

[1] DiBartolo also moves to strike certain allegations from the Amended Complaint pursuant to Fed. R. Civ. P. 12(f). Mem. Law Supp. Def. DiBartolo's Mot. Dismiss and Strike ("DiBartolo Mem.") 12-13, Doc. 14.  Having concluded that this Court lacks subject matter jurisdiction over Plaintiffs' claims, the Court does not address DiBartolo's arguments in support of his motion to strike.

[2] "'Without jurisdiction the court cannot proceed at all in any cause.  Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.'"  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*, 7 Wall. 506, 514, 19 L. Ed. 264 (1868)).  Thus, the Court's conclusion that it does not have jurisdiction over Plaintiffs' claims precludes the Court from considering the parties' remaining arguments relating to statutory standing or the merits of Plaintiffs' claims.  *Id.* at 94-96; *see also Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 86-87 (2006) (interpreting *Steel Co.* to mean that Article III standing must be addressed before a district court may give *any* consideration to the merits or to issues of statutory standing that are closely related to the merits).

not have subject matter jurisdiction over Plaintiffs' claims requires that the action be remanded to state court pursuant to 28 U.S.C. § 1447(c).

## I. Background

Plaintiffs bring this action as municipal taxpayers on behalf of the Town of Yorktown (the "Town"), to recover funds allegedly misappropriated by DiBartolo during his sixteen-year tenure as the Town Highway Superintendent by, *inter alia*, engaging in "a pattern of waste, mismanagement and outright theft of the assets and monies of the Town of Yorktown."[3]  Am. Compl. ¶¶ 1, 13, 107, 126.  Plaintiffs do not allege any personal injuries as a result of Defendants' conduct.  *Id.* ¶ 2.  Indeed, Plaintiffs explicitly disclaim that they have suffered any injuries individually or in their roles as taxpayers as a result of Defendants' conduct.  *Id.* ¶¶ 2, 115, 122; Pls.' Mem. Opp. Mot. Dismiss Filed by Yorktown ("Pls.' Yorktown Mem.") 11-12, Doc. 16; *see also* Pls.' Mem. Opp. Mot. Dismiss and Strike ("Pls.' DiBartolo Mem.") 4 n.9, Doc. 17.  The sole purpose of this action is to "recoup damages for the benefit of the Town of Yorktown."  *See, e.g.*, Am. Compl. ¶¶ 2, 95, 97, 107, 122, 126.  Plaintiffs also seek equitable relief on behalf of the Town.  *Id.* ¶ 4.  Plaintiffs assert that they have standing to assert derivative claims on behalf of the Town pursuant to GML § 51, which provides for taxpayer claims against municipal officers for illegal acts.  *Id.* ¶¶ 5-6, 106-07, 125-26; *see* GML § 51.

## II. Legal Standard for Rule 12(b)(1) Motion to Dismiss

"'Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.'"  *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted).  "Because standing is

---

[3] A detailed recitation of the factual allegations set forth in the Amended Complaint is not provided.  The Court discusses here only those facts necessary and relevant to the resolution of the motion.

challenged on the basis of the pleadings, [the Court] accept[s] as true all material allegations of the complaint, and must construe the complaint in favor of the [plaintiff]." *Connecticut v. Physicians Health Servs. of Conn., Inc.*, 287 F.3d 110, 114 (2d Cir. 2002) (citation and internal quotation marks omitted).  However, the burden remains on Plaintiffs, as the parties invoking federal jurisdiction, to establish their standing as the proper parties to bring this action.[4]  *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 89 (2d Cir. 2009) (citation omitted); *see also FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) ("It is a long-settled principle that standing cannot be inferred argumentatively from averments in the pleadings, but rather must affirmatively appear in the record," and if the plaintiff fails to "clearly [] allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute," he does not having standing under Article III (internal citations and quotation marks omitted)).

**III. Article III Standing**

DiBartolo contends that Plaintiffs lack Article III standing to seek relief in this Court because they do not claim to have suffered an injury-in-fact as a result of Defendants' purported conduct.  *See* DiBartolo Mem. 6-9.  In the Amended Complaint and in opposing DiBartolo's motion to dismiss, Plaintiffs assert that they have standing to bring derivative claims on behalf of the Town pursuant to GML § 51.  Am. Compl. ¶¶ 5-6, 106-07, 125-26; Pls.' DiBartolo Mem. 3-4 & n.9.  Plaintiffs concede, however, that there are no cases—*in either state or federal court*—supporting, or even addressing, Plaintiffs' contention that GML § 51 gives them "derivative standing" to assert the claims set forth in the Amended Complaint on behalf of the Town.  Pls.' DiBartolo Mem. 4 n.7.

---

[4] Although DiBartolo was the party who originally invoked the jurisdiction of this Court in removing the action from state court, *see* Doc. 1 at 1, ¶¶ 2-3, Plaintiffs subsequently filed an Amended Complaint asserting federal jurisdiction, Am. Compl. ¶ 11, and Plaintiffs continue to assert federal jurisdiction in opposing DiBartolo's motion to dismiss.  *See* Pls.' DiBartolo Mem. 2-4.

### A.  Legal Framework

"Article III, § 2, of the Constitution restricts the federal 'judicial Power' to the resolution of 'Cases' and 'Controversies.'  That case-or-controversy requirement is satisfied only where a plaintiff has standing."  *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.,* 554 U.S. 269, 273 (2008) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006)).  "[I]n order to have Article III standing, a plaintiff must adequately establish:  (1) an injury in fact (*i.e.,* a concrete and particularized invasion of a legally protected interest); (2) causation (*i.e.,* a fairly traceable connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (*i.e.,* it is likely and not merely speculative that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit)."  *Id.* at 273-74 (internal quotation marks and alterations omitted) (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992)). If Plaintiffs lack Article III standing, this Court has no subject matter jurisdiction to hear their claims.  *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005) (quoting *Steel Co.*, 523 U.S. at 94).

To satisfy the "injury-in-fact" requirement, Plaintiffs must establish that they have suffered a palpable and distinct harm that affects them "in a personal and individual way." *Lujan,* 504 U.S. at 560 n.1.  The "injury-in-fact" element of constitutional standing ensures that the plaintiff has a "personal stake" in the outcome of the litigation.  *Baker v. Carr,* 369 U.S. 186, 204 (1962); *see also Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 166 (1972) (stating that a party "has standing to seek redress for injuries done to him, but may not seek redress for injuries done to others.").  Additionally, "[a] plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future."  *DeShawn E. by Charlotte E. v. Safir,* 156 F.3d 340, 344 (2d Cir. 1998)

(citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105-06 (1983)); *see also Lujan*, 504 U.S. at 564 ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." (internal quotation marks omitted) (quoting *Lyons*, 461 U.S. at 102)).

**B.  Plaintiffs' Article III Standing to Assert Derivative Claims on behalf of the Town**

Plaintiffs rely exclusively on GML § 51 to argue that they may bring their derivative claims on behalf of the Town in this Court.  Pls.' DiBartolo Mem. 3-4 & n.9; *see also, e.g.*, Am. Compl. ¶¶ 5-6, 106-07, 125-26.  "Standing to sue in any Article III court is, of course, a federal question which does not depend on the party's prior standing in state court."  *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 804 (1985) (citations omitted).  State courts may afford litigants standing to appear where federal courts would not, but the fact that a state court would permit a plaintiff to assert an action has no bearing on the plaintiff's standing under Article III.  *See Lyons,* 461 U.S. at 113 ("[T]he state courts need not impose the same standing or remedial requirements that govern federal court proceedings.").  In other words, even if Plaintiffs would have standing to assert the derivative claims in the Amended Complaint on behalf of the Town in state court pursuant to GML § 51, Plaintiffs are still required to meet the stricter federal standing requirements of Article III in order to assert such claims in this Court.  *See Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 173 (2d Cir. 2005) (Sotomayor, J.); *see also Cantrell v. City of Long Beach*, 241 F.3d 674, 683-84 (9th Cir. 2001) (explaining that state statute conferring broad standing for taxpayers to bring claims in state court did not satisfy constitutional standing requirements (citations omitted)).

The Seventh Circuit, on two separate occasions, explicitly rejected the argument that the plaintiffs had standing to assert federal claims on behalf of the State of Illinois in federal court

pursuant to a similar Illinois taxpayer standing law.  *See Illinois ex rel. Ryan v. Brown*, 227 F.3d 1042, 1045-46 (7th Cir. 2000) (holding that Illinois law did not give plaintiffs standing to assert a RICO claim in federal court because "the question of standing for RICO purposes is indeed a federal one that must be resolved by reference to federal law," and "[g]eneral taxpayer actions are not permitted." (citations omitted)); *see also Rifkin v. Bear Sterns & Co., Inc.*, 248 F.3d 628, 631-33 (7th Cir. 2001) (relying on the *Brown* decision in holding that taxpayer-plaintiffs did not have Article III standing to assert claims under the federal Investment Advisers Act of 1940 on behalf of Cook County, because "[w]hether taxpayers can sue to vindicate Cook County's rights under the Advisers Act is a question that must be answered with reference to federal law, both at the level of Article III and prudential standing, and if need be at the statutory level.").

Plaintiffs' reliance on shareholder derivative lawsuits to argue that they have standing to assert a derivative RICO claim on behalf of the Town is unavailing; the cases cited by Plaintiffs are entirely inapposite.  *See* Pls.' DiBartolo Mem. 4.  In *Ceribelli v. Elghanayan*, the Second Circuit held that shareholders could pursue a direct action under civil RICO where the defendant had violated an independent duty to the shareholders.  990 F.2d 62, 64-65 (2d Cir. 1993).  In *At The Airport v. ISATA, LLC*, the court dismissed an individual shareholder's civil RICO claim because the alleged injury was derivative of the injury suffered by the corporation.  438 F. Supp. 2d 55, 62-63, 65 (E.D.N.Y.  2006).  Neither case addresses the shareholder-plaintiffs' Article III standing.[5]

---

[5] Plaintiffs' statutory standing to assert derivative RICO claims on behalf of the Town is a distinct inquiry involving additional requirements separate and apart from Plaintiffs' constitutional standing to assert their claims in this Court. *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008) (citing *Gladstone, Realtors v. Vill. of Bellwood*, 441 U.S. 91, 100 (1979)); *see also Cent. States Se. & Sw. Areas Health & Welfare Fund*, 433 F.3d at 199 ("Assuming, without deciding, that Plaintiffs have demonstrated statutory standing, such standing does not necessarily provide constitutional standing." (internal quotation marks and citation omitted)).

Moreover, unlike a shareholder's standing to assert derivatively any claim that could have been asserted by the corporation directly, *see* N.Y. Bus. Corp. Law § 626, GML § 51 only authorizes taxpayers to bring lawsuits against public officials for the specific, limited purposes set forth in the statute, which are:  (1) "to prevent any illegal official act on the part of any such officers," or (2) "to prevent waste or injury to, or to restore and make good, any property, funds or estate" of the municipality.  GML § 51; *see Colella v. Bd. of Assessors*, 741 N.E.2d 113, 117 (N.Y. 2000) (describing GML § 51 as conferring standing on taxpayers "to challenge the actions of local governmental officials in *only limited situations* . . . ." (emphasis added)).  Nothing in GML § 51 purports to allow taxpayers to assert claims on behalf of a municipality that are outside its scope.  *See Rifkin*, 248 F.3d at 632-33 (rejecting similar argument).

Because Plaintiffs have not alleged that they personally suffered an injury-in-fact as a result of Defendants' conduct, they do not have Article III standing to assert their claims in this Court.  Thus, DiBartolo's Motion to Dismiss the Amended Complaint pursuant to Rule 12(b)(1) is GRANTED in part.  Since this action was initiated in state court, the Court's conclusion that it lacks subject matter jurisdiction over Plaintiffs' claims means that the entire action must be remanded to state court pursuant to 28 U.S.C. § 1447(c).[6]  *See Mignogna v. Sair Aviation, Inc.*, 937 F.2d 37, 40 (2d Cir. 1991); *see also Me. Ass'n of Interdependent Neighborhoods v. Comm'r, Me. Dep't of Human Servs.*, 876 F.2d 1051, 1053-54 (1st Cir. 1989) (explaining that district court's determination that plaintiff did not satisfy the minimal, constitutional requirements for standing in a removed action was a determination that the district court lacked subject matter

---

[6] 28 U.S.C. § 1447(c), which governs remand of actions removed under 28 U.S.C. § 1441(a), provides that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."

jurisdiction over the case, and therefore the district court erred in dismissing the action rather

than remanding as required by § 1447(c)).

## IV. Leave to Replead

Plaintiffs assert, in identical footnotes in their memoranda of law, that "[l]eave to replead

should be granted as a matter of course here," because the Amended Complaint was filed "in an

effort to present a document compliant with Federal pleading requirements," and "was not the

result of any previous motion practice."  Pls.' DiBartolo Mem. 15 n.21; Pls.' Yorktown Mem. 16

n.9.  Neither DiBartolo nor Yorktown responded to Plaintiffs' cursory requests for leave to file a

second amended complaint.

Rule 15(a) of the Federal Rules of Civil Procedure provides that the court should grant

leave to amend "freely . . . when justice so requires."  Fed. R. Civ. P. 15(a).  The Second Circuit

has noted that the rule is "applicable to dismissals for failure to plead an adequate basis for

federal jurisdiction . . . [w]here the possibility exists that the defect can be cured and there is no

prejudice to the defendant . . . ."  *Oliver Schools, Inc. v. Foley*, 930 F.2d 248, 252-53 (2d Cir.

1991) (citations omitted).  However, "'[w]here amendment would be futile, denial of leave to

amend is proper.'"  *Wilson v. Merrill Lynch & Co., Inc.*, 671 F.3d 120, 140 (2d Cir. 2011)

(quoting *In re Tamoxifen Citrate Antitrust Litig.,* 466 F.3d 187, 220 (2d Cir. 2006)).  Further,

"the Second Circuit has repeatedly upheld a district court's decision to deny a plaintiff's informal

request to amend its complaint when it failed to advise the district court of how an amendment

would cure defects in the complaint."  *In re Goldman Sachs Mortg. Servicing S'holder*

*Deriviative Litig.*, No. 11 Civ. 4544 (WHP), --- F. Supp. 2d ----, 2012 WL 3293506, at *11

(S.D.N.Y. Aug. 14, 2012) (collecting cases); *see, e.g.*, *Wilson*, 671 F.3d at 140 (affirming district

court's denial of leave to amend where the plaintiff "never indicated to the district court how further amendment would permit him to cure the deficiencies in the complaint.").

Here, Plaintiffs have not offered any indication as to how they might cure the pleading deficiencies in the Amended Complaint. In fact, Plaintiffs did not address Article III standing *anywhere* in their motion papers. Furthermore, this Court held a conference in May 2012, prior to the filing of the instant motions, at which DiBartolo's standing argument was discussed at length. *See* Minute Entry dated May 3, 2012. At that conference, the Court offered Plaintiffs' counsel the opportunity to file a second amended complaint in order to address the pleading deficiencies identified by DiBartolo and Yorktown, but Plaintiffs' counsel declined the Court's invitation to amend.

As Plaintiffs explicitly disclaim that they suffered any direct injury-in-fact as a result of the conduct alleged in the Amended Complaint, the Court concludes that leave to amend would be futile in this case. Therefore, Plaintiffs' request to file a second amended complaint is DENIED.

## V. Conclusion

For the reasons set forth above, DiBartolo's Motion to Dismiss the Amended Complaint for lack of standing is GRANTED in part. The Clerk of the Court is respectfully directed to terminate the pending motions, Docs. 10, 13, close this case, and remand the entire action to the Supreme Court of the State of New York, Westchester County.


It is SO ORDERED.

Dated:    February 21, 2013
          White Plains, New York

                                                Edgardo Ramos, U.S.D.J.

10